IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| JACOB GREENSPAN, | ) C/A No. 2:14-cv-3875-RMG-MGB |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| BROTHERS PROPERTY ) | |
| CORPORATION, BROTHERS ) | |
| PROPERTY MANAGEMENT ) | REPORT & RECOMMENDATION |
| CORPORATION, VICTOR FULLER, ) | OF MAGISTRATE JUDGE |
| Individually and in his official capacity, ) | |
| ANA REINA, Individually and in her ) | |
| official capacity, OLIVER ROOSKENS, ) | |
| Individually and in his official capacity, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This is a civil action filed by a *pro se* litigant. Under Local Civil Rule 73.02(B)(2) of the United States District Court for the District of South Carolina, pretrial proceedings in this action have been referred to the assigned United States Magistrate Judge.

The Plaintiff filed this Complaint on July 18, 2014, in state court. (Dkt. No. 1.) The original Defendants removed this case from the Circuit Court of South Carolina on October 3, 2014, on the basis of diversity between the parties. (*Id.*) On October 28, 2014, the Plaintiff filed a First Amended Complaint in federal court. (Dkt. No. 14.) The First Amended Complaint was filed before any responsive pleading had been filed by the Defendants. Victor Fuller, Ana Reina, and Oliver Rooskens were joined as defendants in the First Amended Complaint and have not yet been served. (*Id.*) On November 4, 2014, the Plaintiff filed Plaintiff's Motion for Remand. (Dkt. No. 21.) Defendants Brothers Property Corporation and Brothers Property Management Corporation (collectively "Brothers") responded on November 17, 2014, by filing

Brothers' Motion to Strike Plaintiff's First Amended Complaint (Dkt. No. 24) and Brothers' Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. No. 25). On November 21, 2014, Brothers filed Defendants' Response in Opposition to Plaintiff's Motion to Remand. (Dkt. No. 28.) Plaintiff replied to Brother's response on December 5, 2014. (Dkt. No. 29.)

## Factual Overview

Defendant Property Brothers Management Corporation dba Charleston Harbor Resort and Marina ("CHRM") hired the Plaintiff on November 30, 2009 as an Accounting Manager. (Dkt. No. 14 ¶14.) On or around February 19, 2010, the Plaintiff began serving as Controller for CHRM and reported directly to Defendant Ana Reina until his employment was terminated on June 18, 2012. (*Id.* at ¶15.) Defendant Oliver Rooskens was the General Manager of CHRM throughout the Plaintiff's employment. (*Id.* at ¶13.) Neither the Plaintiff nor Defendant Rooskens controlled the other's performance or continued employment at CHRM. (*Id.* at ¶23.) Defendant Rooskens is the only defendant alleged to be a South Carolina resident.

## Brothers' Motion to Strike Plaintiff's First Amended Complaint (Dkt. No. 24.)

Rule 15(a) of the Federal Rules of Civil Procedure states, in part,

> (1) Amending as a Matter of Course. A party may amend its pleading once as a matter of course within:
> (A) 21 days after serving it, or
> (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
> (2) Other Amendments. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15. "A plaintiff may amend his complaint one time as a matter of course before the defendant files a responsive pleading." *Hall v. Burney*, 454 F. App'x 149, 151 (4th Cir. 2011) (quoting *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (citing Fed. R. Civ. P. 15(a)). Brothers' Motion to Strike Plaintiff's First Amended Complaint (Dkt. No. 24) argues that the Plaintiff's First Amended Complaint (Dkt. No. 14) was untimely because it was filed more than 21 days after the initial complaint, and the Plaintiff failed to acquire written consent of the opposing party or leave of the court. Brothers' argument ignores Fed. R. Civ. P. 15(a)(1)(B). A complaint is a pleading that requires a responsive pleading. Fed. R. Civ. P. 12(a)(1)(A). The Plaintiff may amend his pleadings as a matter of course up until "21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15. Brothers did not file a responsive pleading until November 17, 2014, 19 days after the Plaintiff's amended complaint. (Dkt. No. 25.) Under Fed. R. Civ. P. 15, the Plaintiff's First Amended Complaint is timely and allowed as a matter of course. The court recommends that Brothers' Motion to Strike Plaintiff's First Amended Complaint (Dkt. No. 24) be denied.

<u>Plaintiff's Motion for Remand (Dkt. No. 21.)</u>

This court has subject matter jurisdiction in this case because of diversity between the parties. The Plaintiff's First Amended Complaint seeks to join Defendant Rooskens, a South Carolina resident. "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. §1447.

The Fourth Circuit addressed the issue of joinder of a non-diverse party after removal in *Mayes v. Rapoport*, 198 F.3d 457 (4th Cir. 1999). In determining whether to allow a plaintiff to join a non-diverse defendant, the court must balance the equities by "consider[ing] all relevant factors, including: the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether the plaintiff has been dilatory in asking for amendment, whether the plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities." *Id.* at 462 (internal quotations omitted). Although the doctrine of fraudulent joinder only applies to parties joined before removal, "if the defendants can carry the heavy burden of proving fraudulent joinder, that fact should be a factor—and perhaps the dispositive factor—that the court considers in deciding whether a plaintiff may join a non-diverse defendant" after removal to federal court. *Id.* at 463.

> In order to establish that a nondiverse defendant has been fraudulently joined, the removing party must establish either: [t]hat there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or [t]hat there has been outright fraud in the plaintiff's pleading of jurisdictional facts.

*Id.* at 464 (quoting *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993) (emphasis in original; internal quotation omitted in original)). The Fourth Circuit "noted that '[t]his standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6).'" *Id.* at 457 (quoting *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir.1999)). The joinder of Defendant Rooskens will destroy diversity in this case and require the court to remand the case back to state court. In balancing the equities as required in *Mayes*, this court recommends the joinder of Defendant Rooskens be allowed because the removing parties have not met

4

their burden of showing fraudulent joinder and, when balancing the equities, other factors weigh in the Plaintiff's favor as well.

As fraudulent joinder is "perhaps the dispositive factor" in determining whether to allow the Plaintiff to join Defendant Rooskens, the court begins its analysis there. *Mayes*, 198 F.3d at 463. Brothers do not dispute that Defendant Rooskens is a South Carolina resident and his joinder would destroy diversity. (Dkt. No. 28 at 1-2 of 18.) Therefore to show fraudulent joinder, Brothers "must establish…[t]hat there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." *Id.* at 464 (quoting *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993) (emphasis in original; internal quotation omitted in original)).

The First Amended Complaint contains nineteen causes of action. (Dkt. No. 14.) Defendant Rooskens' name is contained in allegations throughout the Complaint. The causes of action all relate to the Plaintiff's former employment at the Charleston Harbor Resort and Marina. The First Amended Complaint contains causes of action ranging from negligence and breach of contract to fraudulent concealment and defamation.

To show fraudulent joinder, Brothers must establish that none of these nineteen causes of action can possibly be established against Defendant Rooskens. The Plaintiff's seventeenth cause of action alleges "Wrongful Discharge for Violation of Public Policy." (Dkt. No. 14 at ¶252.) The Plaintiff alleges Defendant Rooskens and "Defendant CHRM" retaliated against and eventually terminated the Plaintiff for his complaints regarding "pay practices, including…failure to pay wages due, and for complaints about the employer's alleged violations of S.C. Code Ann § 41-10-10, *et*

5

*seq.*" (Dkt. No. 14 ¶253.)  S.C. Code Ann § 41-10-10, *et seq.* is known as the Payment of Wages Act ("the Act").  Additionally, the Plaintiff alleges that a unilateral employment contract issued to him violated the form requirements of the Act found in S.C. Code Ann. § 41-1-110 by not containing a disclaimer in underlined capital letters on the first page.  (Dkt. No. 14 ¶256.)  The Plaintiff alleges that between June 13-17, 2012, Defendant Rooskens "procured the authorization to terminate Plaintiff's employment…in retaliation for Plaintiff's continued complaints of…fraudulent and oppressive pay practices."  (Dkt. No. 14 ¶257.)  The Defendants terminated the Plaintiff's employment on June 18, 2012. (Dkt. No. 14 ¶258.)

In Defendants' Response in Opposition to Plaintiff's Motion to Remand, Brothers argue that the Plaintiff alleges that at all times he was an employee of Charleston Harbor Resort and Marina and never was an employee of Defendant Rooskens.  (Dkt. no. 28.)  Brothers note that the Plaintiff alleges Defendant Rooskens was an agent of his employer and had no power to fire the Plaintiff.  (*Id.*)  Brothers argue there is no precedent that allows a wrongful discharge claim against an employer's agents such as coworkers or supervisors and cite several cases holding the same.  (*Id.*)

The issue before the court is whether there is a possibility the Plaintiff can establish Defendant Rooskens, a co-employee, is liable for wrongful discharge in violation of public policy.  The burden of showing there is no possibility of establishing a claim against Defendant Rooskens is on Brothers.  *Mayes*, 198 F.3d  at 464 ("[T]he defendant must show that the plaintiff cannot establish a claim against the nondiverse defendant even after resolving all issues of fact and law in the plaintiff's favor.").  Whether or not an action for wrongful discharge for violation of public policy can be

brought for retaliation and termination following a complaint over wages is a matter of first impression in South Carolina.

Absent a specific contract, employment in South Carolina is at-will. *Mathis v. Brown & Brown of S. Carolina, Inc.*, 389 S.C. 299, 309, 698 S.E.2d 773, 778 (2010). "An at-will employee may be terminated at any time for any reason or for no reason, with or without cause." *Id.* at 310. "Under the 'public policy exception' to the at-will employment doctrine, however, an at-will employee has a cause of action in tort for wrongful termination where there is a retaliatory termination of the at-will employee in violation of a clear mandate of public policy." *Barron v. Labor Finders of S. Carolina*, 393 S.C. 609, 614, 713 S.E.2d 634, 636-37 (2011). The public policy exception does not apply in cases where there is an existing statutory remedy. *Id.* at 615, 713 S.E.2d at 637.

In *Barron v. Labor Finders of South Carolina,* 393 S.C. 609, 713 S.E.2d 634 (2011), the Supreme Court of South Carolina addressed a plaintiff's ability to establish a claim for wrongful discharge based on violations of public policy similar to the claims in the case at bar. Glenda Barron was fired after approaching her supervisor regarding commissions she was due but was not receiving. *Id.* at 612. The next day she was fired, but she did receive her missing commissions eight or nine days later. *Id.* at 613. She never "filed a written complaint with the Department of Labor, Licensing, and Regulation as outlined by the Payment of Wages Act." *Id.* In ruling on Labor Finders' motion for summary judgment[1], the *Barron* court held "that there is no existing statutory

---

[1] The standard for summary judgement is less stringent than the standard in the case at bar. Additionally, summary judgment is ruled on after discovery. The standard in the case at bar requires Brothers to show

remedy for wrongful termination within the Act that would prohibit an employee from maintaining a claim based upon a violation of public policy." *Id* at 617.  The *Barron* court declined to rule on "the possibility that a claim for wrongful termination in violation of public policy may exist when an employee is terminated in retaliation for instituting a claim under the Act."  *Id.* at 618.  The *Barron* court upheld the circuit court's grant of summary judgment for Labor Finders because "there is no evidence petitioner was terminated in retaliation for filing or threatening to file…a claim" under the Act.  *Id.*

In the case at bar, the court must resolve "all issues of fact and law in the plaintiff's favor." *Mayes* at 464.  The Plaintiff does not address in his complaint whether or not he filed or threatened to file a complaint under the Act.  The Plaintiff does, however, cite the Act as the basis for his public policy claim and repeatedly alleges he made complaints regarding pay and compensation.  (Dkt. No. 14 ¶253.)  His First Amended Complaint does not state whether or not his complaints were solely internal or made in compliance with the Act.  Whether or not the Plaintiff threatened to file or filed a complaint under that Act, as contemplated by the *Barron* court, must be viewed in the Plaintiff's favor by this court.  As this is a matter of first impression in South Carolina, this court cannot predict how a state court may rule on allowing the Plaintiff's claim.  Therefore the court finds there is a possibility the Plaintiff's claim of Wrongful Discharge for Violation of Public Policy could be established.

The court now turns to whether there is a possibility that the Plaintiff may establish this cause of action against Defendant Rooskens.  Whether or not such a claim may be brought against only the employer or against a co-employee as well is a

---

that there is no possibility the Plaintiff would be able to establish a claim.

8

matter of first impression in South Carolina. Other states that have addressed whether or not a co-employee who played a role in the termination can be held liable in a wrongful discharge for violations of public policy are split. *VanBuren v. Grubb*, 471 F. App'x 228, 229 (4th Cir.) *certified question answered*, 284 Va. 584, 733 S.E.2d 919 (2012) (citing *Jasper v. H. Nizam, Inc.*, 764 N.W.2d 751, 775 (Iowa 2009)); *Physio GP, Inc. v. Naifeh*, 306 S.W.3d 886, 888–89 (Tex. App. 2010); *Physio GP*, 306 S.W.3d at 891 & n. 2 (Hudson, J., dissenting) (collecting cases).

States that allow individual co-employees to be liable view wrongful discharge for violation of public policy as any other tort that imposes liability on the individual that committed the tortious conduct. *VanBuren*, 471 F. App'x at 235. These states favor this approach because it imposes liability on the "active wrongdoer" and founds "liability on the wrong reasons for the discharge, not the discharge itself." *VanBuren*, 471 F. App'x at 235 (internal quotations omitted). States that restrict liability solely to the actual employer in claims for wrongful discharge for violation of public policy conclude that "the employment relationship exists between the employee and the employer, meaning only the employer possesses the power to fire an employee." *VanBuren*, 471 F. App'x at 235. Only the employer has the power to terminate an employee, therefore only the employer may be held liable. *VanBuren*, 471 F. App'x at 235.

In *VanBuren* the Fourth Circuit questioned the district court's dismissal of a claim for wrongful discharge for violations of public policy against an individual defendant who "played a role in wrongfully terminating the employee." *VanBuren*, 471 F. App'x at 235. The Fourth Circuit found that the issue of the individual's liability was an issue of first impression in Virginia, and the district court's ruling on the issue was improper.

*VanBuren*, 471 F. App'x at 235. The Fourth Circuit remedied the district court's ruling by certifying a question to the Supreme Court of Virginia. *VanBuren*, 471 F. App'x at 230.[2] Following the Supreme Court of Virginia's ruling that the case could proceed against the individual defendant, the district court was reversed. *VanBuren v. Grubb*, 514 F. App'x 364 (4th Cir. 2013).

The court must determine whether Brothers has met its heavy burden of showing there is no possibility the Plaintiff may establish a claim of wrongful discharge in violation of public policy against Defendant Rooskens. In *Savino Del Bene, U.S.A., Inc. v. Hartford Fin. Servs. Grp., Inc.*, No. 11-C-6103, 2012 WL 3961224 (N.D. Ill. Sept. 7, 2012), the United States District Court for the Northern District of Illinois addressed the issue of when a claim asserted by a plaintiff against the non-diverse party in a fraudulent joinder case is a matter of first impression under state law, whether or not the claim is "possible." The issue before the *Savino* court was whether a common law bad faith claim may be brought against the non-diverse party after removal. *Id.* The *Savino* court held that it was "reasonably possible that a claim could proceed" and remanded the case to state court. *Id.* at 2. The court based its ruling on the fact that the issue had not been decided by Illinois state courts and other jurisdictions were split on the issue. *Id.* The *Savino* court noted that state court would be "particularly appropriate" because the issue was a matter of first impression. *Id.* at 2.

---

[2] *See VanBuren v. Grubb*, 284 Va. 584, 733 S.E.2d 919, (2012) (concluding that Virginia recognizes a common law tort claim of wrongful discharge in violation of established public policy against an individual who was not the plaintiff's actual employer but who was the actor in violation of public policy and who participated in the wrongful firing of the plaintiff).

The issues in *Savino* mirror the issues in the case at bar. The viability of the Plaintiff's claim and who he may assert it against are matters of first impression in South Carolina. Other jurisdictions are split as to who may be liable under the Plaintiff's claim. Brothers has not met their burden because there is a possibility that a South Carolina state court would rule the Plaintiff's claim is viable as a tort and may be asserted against Defendant Rooskens. All issues of law must be resolved in favor of the Plaintiff. Brothers cannot overcome that both the Plaintiff's claim and raising it against a co-employee are matters of first impression in South Carolina. Brothers cannot establish Defendant Rooskens was fraudulently joined.[3]

In weighing whether to allow a plaintiff to join a non-diverse defendant after a case has been removed, the court must consider several other factors as part of balancing the equities. *Mayes*, 198 F.3d at 462. The joinder of Defendant Rooskens as a non-diverse party does concern the court because it was done immediately after the case was removed without any discovery taking place. The timing of the Plaintiff's joinder of Defendant Rooskens gives the appearance he was joined for the sole purpose of destroying diversity. However, as discussed *supra*, this court cannot preclude the possibility that the Plaintiff has a viable claim against Defendant Rooskens. While the Plaintiff could have named Defendant Rooskens in his original complaint, his First Amended Complaint was allowed as a matter of course because Brothers had yet to file any responsive pleadings. His joinder of Defendant Rooskens is timely under the rules. Additionally, the Plaintiff is a *pro se* litigant, and courts give *pro se* litigants

---

[3] The court does not address the Plaintiff's other causes of action as it has found this cause of action to be viable.

leeway in reading their filings to ensure justice is achieved.  *See Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.1978).

After considering all relevant factors in this case, this court recommends that the joinder of Defendant Rooskens be allowed because the balance of the equities weighs in the Plaintiff's favor.  Brothers have not met their burden of showing the Plaintiff cannot possibly establish a claim against Defendant Rooskens to demonstrate fraudulent joinder.  Defendant Rooskens' joinder as part of the Plaintiff's First Amended Complaint was timely under Fed. R. Civ. P. 15.  The Plaintiff would be significantly injured if possibly valid claims are not allowed by the court in order to preserve its own jurisdiction because Brothers removed this case.  The recommended joinder of Defendant Rooskens destroys diversity in this case.  This court recommends this case be remanded to state court as this court no longer has jurisdiction.  If the district court is inclined to follow this recommendation, this court recommends the remaining pending motions cannot be ruled on as this court has no jurisdiction.[4]

## Conclusion

Wherefore, it is RECOMMENDED that Brothers' Motion to Strike Plaintiff's First Amended Complaint (Dkt. No. 24) be DENIED.  It is RECOMMENDED that Plaintiff's Motion For Remand (Dkt. No. 21) be GRANTED.

IT IS SO RECOMMENDED.

Signature Page Attached.

---

[4] There are two additional pending motions in this case, the Plaintiff's Application To Proceed Without Prepayment Of Fees And Affidavit (Dkt. No. 17) and Brothers' Motion To Dismiss Plaintiff's First Amended Complaint (Dkt. No. 25).

April 6, 2015

Charleston, South Carolina

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

*Parties' attention is directed to the information on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).