IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Jacob Greenspan, | No. 2:14-cv-3875-RMG |
| Plaintiff, | **ORDER** |
| vs. | |
| Brothers Property Corporation, Brothers Property Management Corporation, Victor Fuller, Ana Reina, Oliver Rooskens, | |
| Defendants. | |

This matter is before the Court on the Magistrate Judge's Report and Recommendation ("R & R"), Dkt. No. 32, recommending that this Court deny Defendants' Motion to Strike (Dkt. No. 24) and grant Plaintiff's Motion to Remand (Dkt. No. 21). For the reason stated below, the Court ADOPTS the R & R, DENIES the motion to strike and GRANTS the motion to remand.

## I. Background[1]

Plaintiff filed this action in state court against his former employers Brothers Property Corporation and Brothers Property Management Corporation (collectively "the Brothers Defendants" or "Defendants"), raising a number of state law causes of action. Brothers Property Management Corporation does business as Charleston Harbor Resort and Marina ("the Resort") and is a wholly owned subsidiary of Defendant Brothers Property Corporation. (*See* Dkt. No. 34 at 3). Plaintiff was hired as an Accounting Manager for the Resort in 2009 and later promoted to Controller for the Resort in 2010. (Dkt. No. 14 at ¶¶ 14-15). In June of 2012, Plaintiff was

---

[1] Facts are taken from the First Amended Complaint, and the Court assumes these facts are true for the purposes of the motions at issue.

terminated ostensibly for tardiness and absences at work. (*Id.* at ¶¶ 117-118). Plaintiff claims his termination was for unlawful reasons. (*See generally* Dkt. No. 14).

The Brothers Defendants properly removed this action to federal court based on diversity jurisdiction. (Dkt. No. 1). After removal, but before the defendants answered, Plaintiff filed a First Amended Complaint as a matter of course under Rule 15(a).[2] (Dkt. No. 14). This First Amended Complaint names three additional individual defendants: Oliver Rooskens, Victor Fuller, and Ana Reina. Rooskens is the General Manager of the Resort, Fuller is the President of the parent company Brothers Property Corporation, and Reina is the Chief Financial Officer of the parent company Brothers Property Corporation. (Dkt. No. 14 at ¶¶ 7-10). Plaintiff alleges that as Controller, he reported directly to CFO Reina. (*Id.* at ¶ 15). However, documents attached to the Complaint show that Plaintiff reported to **both** Rooskens, as General Manger of the Resort, and to the corporate CFO Reina. (Dkt. No. 1-1 at 58-60). Plaintiff alleges that Fuller and Reina are residents of Florida, and Rooskens is a resident of South Carolina. (*Id.*).

The addition of Defendant Rooskens defeats diversity jurisdiction, and Plaintiff filed a motion to remand on this basis. (Dkt. No. 21). The Brothers Defendants responded with a Motion to Strike the First Amended Complaint (Dkt. No. 24), claiming Plaintiff's addition of Defendant Rooskens is a "procedural trick[] to defeat diversity jurisdiction." (Dkt. No. 34 at 19). The Magistrate Judge recommended denying Defendants' motion to strike and granting Plaintiff's motion to remand. (Dkt. No. 32). The Brothers Defendants filed timely objections. (Dkt. No. 34).

---

[2] The Brothers Defendants do no object to the Magistrate Judge's finding that Plaintiff's First Amended Complaint was timely under Rule 15. (Dkt. No. 34 at 11 n.7). The Court agrees with the Magistrate Judge and adopts this portion of the R & R.

## II. Legal Standard

**A. Report and Recommendation**

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). This Court is charged with making a de novo determination of those portions of the R & R or specified proposed findings or recommendations to which objection is made. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting 28 U.S.C. § 636(b)(1)); *accord* Fed. R. Civ. P. 72(b).

As to portions of the R & R to which no specific objection has been made, this Court "must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Id.* (quoting Fed. R. Civ. P. 72 advisory committee note). Moreover, in the absence of specific objections to the R & R, the Court need not give any explanation for adopting the Magistrate Judge's analysis and recommendation. *See Camby v. Davis*, 718 F.2d 198, 199-200 (4th Cir. 1983).

**B. Joinder of a Non-diverse Party after Removal**

"If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e)(1). Whether to allow joinder of a non-diverse defendant is "committed to the sound discretion of the district court," and in exercising this discretion, the district court is "entitled to consider all relevant factors, including: the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether the plaintiff has been dilatory in asking for amendment, whether the plaintiff will be significantly injured if

amendment is not allowed, and any other factors bearing on the equities." *Mayes v. Rapoport*, 198 F.3d 457, 462 (4th Cir. 1999). In sum, "[t]he district court, with input from the parties, should balance the equities in deciding whether the plaintiff should be permitted to join a nondiverse defendant." *Id.* at 463.

While the fraudulent joinder doctrine does not "directly" apply, "if the defendants can carry the heavy burden of proving fraudulent joinder, that fact should be a factor—and perhaps the dispositive factor—that the court considers in deciding whether a plaintiff may join a nondiverse defendant" after removal. *Id.* at 463. Thus, the fraudulent joinder doctrine can be instructive and a factor heavily weighed by the court.

### III. Discussion

#### A. Legal Standard Applied by Magistrate Judge

In their objections to the R & R, the Brothers' Defendants first argue that the Magistrate Judge erred by requiring them to show fraudulent joinder to prevent the addition of Defendant Roosken. Defendants misread the R & R. The Magistrate Judge explicitly stated that "the doctrine of fraudulent joinder only applies to parties joined before removal," but noted that under *Mayes* fraudulent joinder, if shown, "***should*** be a factor–and perhaps the dispositve factor." (Dkt. No. 32 at 4 (emphasis added)). Thus, Magistrate Judge "beg[an] [her] analysis there." (*Id.* at 5). The Magistrate Judge went on to weigh other factors and, "[a]fter considering all relevant factors in the case," recommended that "the joinder of Defendant Rooskens be allowed because the balance of the equities weighs in the Plaintiff's favor." (Dkt. No. 32 at 11-12). Therefore, the Magistrate Judge applied the appropriate standard, and this objection is overruled.

## B. Whether Defendants Have Shown Fraudulent Joinder

The term "fraudulent joinder" is "a bit misleading" as it does not require a showing of fraud or joinder. *Mayes*, 198 F.3d at 461 n.8. To establish that a nondiverse defendant has been fraudulently joined, the removing party must establish either: (1) that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or (2) that there has been outright fraud in the plaintiff's pleading of jurisdictional facts. *E.g., Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993). This is a heavy burden. *Id.* The defendant must show the plaintiff cannot establish a claim against the nondiverse defendant "even after resolving all issues of fact and law in the plaintiff's favor." *Id.* at 232-233. In determining whether a joinder is fraudulent, the court "is not bound by the allegations of the pleadings, but may instead consider the entire record, and determine the basis of joinder by any means available." *Mayes*, 198 F.3d at 464.

The Magistrate Judge found that, after resolving all issues of fact and law in Plaintiff's favor, it was possible that the Plaintiff could establish a claim for wrongful termination in violation of public policy against Defendant Rooskens, and Defendants failed to show fraudulent joinder. (Dkt. No. 32 at 6-11). This Court agrees.

### 1. Bringing a Claim for Wrongful Termination Against Individual Defendants

Defendants first object to the Magistrate Judge's finding that it was possible to bring a claim for wrongful termination in violation of public policy against individuals. (Dkt. No. 34 at 11). As Defendants' note, "[t]here is no South Carolina authority that would allow Plaintiff to bring a claim for wrongful termination in violation of public policy against any individual defendant." (*Id.*). There is also no authority holding such claims cannot be brought against

individuals. Thus, as Defendants concede, the question is one of first impression in South Carolina. (*See id.* at 13). There is a split of authority in other jurisdictions. (*See* Dkt. No. 32 (listing cases)); *see also VanBuren v. Grubb*, 471 F. App'x 228, 235 (4th Cir. 2012) (discussing this split of authority). Where there is a question of first impression and split of authority in other jurisdictions, "it is reasonably possible that a claim could proceed." *Savino Del Bene, U.S.A., Inc. v. Hartford Fin. Servs. Grp., Inc.*, No. 11 C 6103, 2012 WL 3961224, at *2 (N.D. Ill. Sept. 7, 2012). This is all that is required to defeat a claim of fraudulent joinder. *See Johnson v. Am. Towers, LLC*, 781 F.3d 693, 704 (4th Cir. 2015) (Defendant must show "there is ***no possibility*** that the plaintiff would be able to establish a cause of action against the in-state defendant in state court.") (emphasis in original); *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) (Plaintiff "need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate.") (emphasis in original); 6 James Wm. Moore et. al., Moore's Federal Practice ¶ 102.21[5][a] ("The court must determine whether there is 'arguably a reasonable basis' for predicting that the state law ***might*** impose liability on the facts involved. If that possibility exists, an assertion of the expectancy is not a sham, and is not fraudulent . . .") (emphasis added).

Contrary to Defendants' assertions, the Magistrate Judge did not expand the tort of wrongful termination in South Carolina. She held that "***there is a possibility*** that a South Carolina state court would rule the Plaintiff's claim is viable as a tort," and "[a]ll issues of law must be resolved in favor of the Plaintiff." (Dkt. No. 32 at 11) (emphasis added). Thus, resolving this issue of law in favor of Plaintiff, the Brothers Defendants have not established that Defendant Rooskens was fraudulently joined.

The Magistrate Judge also did not give "dispositive effect" to the Virginia Supreme Court case *VanBuren v. Grubb*, 733 S.E.2d 919 (Va. 2012), as Defendants claim. (Dkt. No. 34 at 12). She gave weight to the fact that, when the Fourth Circuit faced this very question–whether a wrongful discharge in violation of public policy claim could lie against an individual defendant–under Virginia law, the Fourth Circuit found itself "unable to predict with confidence how the Supreme Court of Virginia would rule" and certified the question, rather than affirm the district court's dismissal. *VanBuren v. Grubb*, 471 F. App'x 228, 235-36 (4th Cir. 2012). The Virginia Supreme Court's answer proved the district court was incorrect to assume such a claim did not exist.

2. Bringing a Claim for Wrongful Termination Against Defendant Rooskens

Next, Defendants argue that even if a claim of wrongful discharge in violation of public policy could lie against individuals, it could not lie against Defendant Rooskens who is a "co-worker" and not Plaintiff's direct supervisor or an officer of the corporation. (Dkt. No. 34 at 12-14). As South Carolina courts have not addressed whether this tort can be brought against individuals at all, they have not addressed the *type* of individual against whom such a tort can be brought.

Other jurisdictions have varied, though they have largely left the question to develop in future cases. In *Jasper v. H. Nizam, Inc.*, the Iowa Supreme Court held that liability can extend to officers of the corporation who "authorized or directed the discharge" but left for another day "how deep the tort could reach in the corporate chain of management in a particular situation." 764 N.W.2d 751, 776 (Iowa 2009), *as amended on denial of reh'g* (Mar. 5, 2009). The New Jersey Supreme Court held that "an individual who personally participates in the tort of wrongful

discharge may be held individually liable," without expanding on what constitutes participation. *Ballinger v. Delaware River Port Auth.*, 800 A.2d 97, 110 (2002). The Virginia Supreme held that the tort could lie against "employees in a position of power." *VanBuren v. Grubb*, 733 S.E.2d 919, 923 (2012). While the individual at issue in *VanBuren* was the plaintiff's supervisor and owner of the company, the court did not limit its holding to such individuals. Indeed, it noted that it had allowed such claims to proceed against "individual defendants who both committed the acts in violation of public policy and effected the termination." *Id.* at 922 (emphasis added).

Here, Defendants make much of the fact that Plaintiff alleges that he and Rooskens both reported to corporate-level management and neither was "authorized to terminate the employment of the other at their own discretion." (Dkt. No. 14 at ¶ 23). However, documents attached to the Complaint show that Plaintiff reported to **both** Rooskens and the corporate Chief Financial Officer. (Dkt. No. 1-1 at 58-60). Both supervisors signed the "Final Notice" issued to Plaintiff before termination. (*Id.* at 60). Plaintiff also alleges that Defendant Rooskens had sole control over setting Plaintiff's salary and determining Plaintiff's annual bonus, disciplined Plaintiff, provided (or failed to provide) equipment for Plaintiff to use in his job, and was responsible for Plaintiff's workplace conditions. (*See, e.g.*, Dkt. No. 14 at ¶¶ 26, 31, 43, 52, 55, 56, 65, 69, 90). Plaintiff also alleges that his termination was the culmination of disciplinary events that Rooskens took in retaliation for Plaintiff's complaints against him and "his engagement in the various fraudulent and oppressive pay practices and other improprieties." (*See, e.g., id.* at ¶¶ 69, 97, 116). Plaintiff also alleges that while Rooskens lacked the authority to terminate Plaintiff at his own discretion, he "effectuate[ed] the termination of Plaintiff's

employment" and received authorization to terminate Plaintiff "by making false and pretextual accusations" about Plaintiff "in bad faith." (*Id.* at ¶¶ 110-113). Under these facts, it is possible that South Carolina courts would hold that Defendant Rooskens was in a "position of power" and/or "participated in the wrongful discharge" such as to be held liable under the tort. South Carolina courts may also hold to the contrary, but the possibility is sufficient to overcome a claim of fraudulent joinder.

### 3. Whether Plaintiff Can State a Claim for Wrongful Termination in Violation of Public Policy

Plaintiff alleges, among a number of other things, that he was terminated in retaliation for complaining "about the employer's pay practices, including the employer's failure to pay wages due, and for complaints about the employer's alleged violations of the S.C. Code Ann. § 41-10-10, *et. seq.*," known as the Payment of Wages Act. (Dkt. No. 14 at ¶ 253). The Magistrate Judge, relying on *Barron v. Labor Finders of S. Carolina*, 713 S.E.2d 634 (S.C. 2011), found that whether an employee could bring a claim for wrongful termination in violation of public policy when he is terminated in retaliation for filing or threatening to file a claim under the Payment of Wages Act is a question South Carolina courts have not yet answered. (Dkt. No. 32 at 7-8).

Defendants do not appear to dispute this particular finding, and they could not. The Court in *Barron* stated that:

> We do not foreclose the possibility that a claim for wrongful termination in violation of public policy may exist when an employee is terminated in retaliation for instituting a claim under the Act. We simply decline to address the issue at this time because there is no evidence petitioner was terminated in retaliation for filing or threatening to file such a claim.

713 S.E.2d at 638-39. Instead, Defendants argue that there are no allegations in the First Amended Complaint "that support the position that [Plaintiff] instituted (or even threatened to institute) a claim with an external government agency." (Dkt. No. 34 at 16-17). Thus, Defendants claim, "*Barron* is dispositive," and Plaintiff cannot state a claim for wrongful discharge in violation of public policy. (*Id.* at 17).

The Court agrees with the Magistrate Judge that while Plaintiff alleges some specific internal complaints, he does not state whether, as part of these complaints, he threatened to file a complaint under the Payment of Wages Act or whether the other "complaints" referenced in the pleading include an external complaint. Proceeding *pro se*, Plaintiff is "entitled to a liberal construction of his pleadings." *E.g., In re Jenkins*, - - - F.3d - - - -, No. 14-1385, 2015 WL 1883539, at *2 (4th Cir. Apr. 27, 2015). Furthermore, the question is not whether Plaintiff has stated a claim for relief but whether there is a possibility that he could state a claim for relief. *See Johnson v. Am. Towers, LLC*, 781 F.3d 693, 704 (4th Cir. 2015) (Plaintiff must "show only a 'glimmer of hope' of succeeding against the non-diverse defendants."); *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999) ("This standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6)."). The Court finds that Plaintiff has at least a "glimmer of hope" of succeeding on his claim.

Additionally, the South Carolina Supreme Court has held that the public policy exception "clearly applies" where "the employer requires the employee to violate the law." *E.g., Barron*, 713 S.E.2d at 637. In addition to his claim that he was terminated in retaliation for his complaints about violations of the Wages Payment Act, Plaintiff alleges that he was terminated

-10-

in retaliation for his "complaints of, opposition to, and efforts to prevent Rooskens' repeated disregard for Plaintiff's duties and obligations as Controller for Defendant CHRM with the intentions of engaging in fraudulent and oppressive pay practices, and other improprieties." (Dkt. No. 14 at ¶ 254). While it is not clear what this paragraph refers to, earlier in the Amended Complaint, Plaintiff alleges that Defendant Rooskens required Plaintiff's subordinates to make fraudulent accounting entries in order to justify Rooskens' disallowance of employee bonuses that had been promised. (Dkt. No. 143 at ¶¶ 83-91). Plaintiff alleges that when he raised the issue, he was immediately given a "Final Notice." (*Id.* at ¶ 92). It is not clear whether Plaintiff is alleging that Rooskens required him, as Controller, to violate the law by signing off on fraudulent accounting entries. However, Defendants have not shown that there is no possibility of such a claim.

The South Carolina Court of Common Pleas may very well dismiss Plaintiff's claims against Defendant Rooskens, but the Court cannot say that "there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." *Johnson*, 781 F.3d at 704. Therefore, a finding of fraudulent joinder is not warranted.

### C. Balancing of the Equities

Whether Defendants can show fraudulent joinder is only one factor for the Court to consider. *See Mayes*, 198 F.3d at 462-63. The Court may also consider "the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether the plaintiff has been dilatory in asking for amendment, whether the plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities." *Id.* at 462.

The Court finds Plaintiff's amendment is not solely for the purpose of defeating jurisdiction. This Court is mindful of the *Mayes* court's warning that when "a plaintiff seeks to add a nondiverse defendant immediately after removal but before any additional discovery has taken place, district courts should be wary that the amendment sought is for the specific purpose of avoiding federal jurisdiction." *Mayes*, 198 F.3d at 463. However, Plaintiff is proceeding *pro se* and claims that when he filed his initial complaint, "he lacked a full understanding of the importance in naming the three individuals as Defendants for the purpose of asserting all valid theories of recovery potentially available to him." (Dkt. No. 29 at 6). He concedes that he "had full knowledge of the roles played by all three named individual defendants at the time he filed his initial Complaint," but claims that he added the defendants to "assert additional meritorious theories of recovery" based on the facts already pled. (*Id.*). *Pro se* litigants, unversed in the law and theories of recovery, may very well realize, after they have filed their initial complaint, that they have causes of actions against additional defendants based on the same facts.

The substance of Plaintiff's Complaint and First Amended Complaint and the addition of Defendants Fuller and Reina, who do are diverse defendants, support Plaintiff's claims that his amendment was not simply to avoid federal jurisdiction. Rooskens is mentioned 369 times in Plaintiff's ***original*** Complaint. (Dkt. No. 1-1). The thrust of Plaintiff's allegations is that Rooskens effected his termination in retaliation for various actions by Plaintiff. (*See generally*, Dkt. No. 14). Clearly, Plaintiff is not attempting to "squeeze" Rooskens into the lawsuit. *See McCaulley v. Purdue Pharma, L.P.*, 172 F. Supp. 2d 803, 810 (W.D. Va. 2001). Rooskens is at the center of it. Furthermore, if Plaintiff wanted to simply avoid federal jurisdiction, he could have added Rooskens only. However, Plaintiff added two additional *diverse* individual

-12-

defendants. The addition of these defendants is consistent with Plaintiff's claim that he originally named only organizational defendants and later added individual defendants once he realized he may have theories of liability against them as well. Thus, the Court finds that Plaintiff's amendment is not a "blatant tactical maneuver," as Defendants claim. (Dkt. No. 34 at 2).

The Court also finds that Plaintiff was not dilatory. He amended his complaint during the time allowed to amend as a matter of course under Fed. R. Civ. P. 15(a). Defendants argue that the fact that Plaintiff's amendment was timely "has no bearing on the Court's analysis under Section 1447(e)." (Dkt. No. 34 at 11 n.7). This statement is contrary to *Mayes'* holding that a district court can consider "whether the plaintiff has been dilatory in asking for amendment." 198 F.3d at 462; *see also Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 759 (7th Cir. 2009) (describing this factor as "the timeliness of the request to amend"). As Defendants note, the timeliness of Plaintiff's amendment is not dispositive. *See id.* at 462 n.11. However, it is a factor.

Another factor for the Court's consideration is "danger of parallel lawsuits in federal and state court, which may spawn inconsistent results and inefficient use of judicial resources." *Mayes*, 198 F.3d at 463. If Plaintiff were forced to sue Rooskens in a separate state court action for his role in Plaintiff's termination, this danger is present.

The Court also considers the fact that the claim against Rooskens raises issues of first impression under state law. Especially given the split of authority on whether claims for wrongful discharge in violation of public policy can be brought against individuals, South

Carolina has a strong interest in resolving this issue of first impression. The Fourth Circuit found this very question to be "one best decided" by state courts. *See VanBuren*, 471 F. App'x at 345.

In sum, the Court agrees with the Magistrate Judge that the balance of the equities weighs in favor of allowing the amendment. Therefore, the Court allows the amendment and remands the action to state court in accordance with Section 1447(e).

### IV. Conclusion

For the reason stated above, the Court ADOPTS the R & R (Dkt. No. 32) as an Order of this Court. Accordingly, the Brothers Defendants' Motion to Strike the First Amended Complaint (Dkt. No. 24) is DENIED, and Plaintiff's Motion to Remand (Dkt. No. 21) is GRANTED.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Judge

April ㉛, 2014
Charleston, South Carolina